# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| KARL TARTT and CEDRIC JENNINGS, | ) |
| Plaintiffs, | ) |
| | ) No. 3:09-cv-01179 |
| v. | ) |
| | ) Judge Sharp |
| WILSON COUNTY, TENNESSEE, | ) |
| Defendant. | ) |

## MEMORANDUM

Plaintiffs Karl Tartt and Cedric Jennings, two African-American men, bring individual race-discrimination claims against Defendant Wilson County, Tennessee for failing to hire them for positions in county government. Tartt submitted an employment application for one position that Wilson County filled at least two months before he applied for it. Jennings never applied for any position. For the following reasons, the Court GRANTS Wilson County's summary-judgment motion seeking the dismissal of Plaintiffs' remaining claims. (Docket No. 87).

## FACTUAL BACKGROUND

Plaintiff Karl Tartt lives in Rutherford County, Tennessee. According to a sworn Equal Employment Opportunity Commission (EEOC) charge Tartt filed in August 2009, Tartt went in December 2008 "to the office of the Department of Solid Waste at the Wilson County landfill to apply for the job of animal control officer." (Docket No. 110-2 at 4; *see also id*. at 6; Docket No. 1 at 11 (original complaint); Docket No. 13 at 11 (first amended complaint)). Tartt secretly recorded his conversation with Heather Christian, the employee at the landfill with whom Tartt spoke that day. (Docket 49-1 at 4). When Tartt requested a job application, Christian asked if he wanted one for Animal Control or another position, (*id*. at 5), because, as she later explained,

there were separate applications for two different departments that employed people at the landfill—the Animal Control Department application, which had "Wilson County Animal Control" written at the top, and the Solid Waste Department application, which had "Wilson County Solid Waste" written on it, (Docket No. 110-6 at 324, 339). Tartt then asked if his application would be kept on file if he did not get a job, and Christian answered that it would. (Docket 53-1 at 2). Tartt filled out the application in his car, writing at the top of it: "Animal Control/open position."[1] (Docket 49-1 at 5). He returned it to the office and left. (Docket No. 1 at 12; Docket No. 13 at 12).

Tartt placed three follow-up calls to the landfill to find out about the status of his application, recording each one. When asked what position he applied for, Tartt twice "responded that he had applied for Animal Control." (Docket No. 1 at 13; Docket No. 13 at 13; Docket No. 18 at 19; Docket No. 53-1 at 4 & 7). During the final call, Tartt spoke to Cindy Lynch, who told him that while the Animal Control Department "accept[s] applications at all times," it did not have any open positions at that point. (Docket No. 53-1 at 7). Tartt told Lynch that "[a]t the time I submitted [an application], there was one open." (*Id*.). Lynch replied that the last open position the Department has was "about six, seven months ago." (*Id*. at 8).

The most recent vacancy in the Animal Control Department before Tartt submitted his application in December 2008 was in July 2008. (Docket No. 26 at 1). The Department advertised that vacancy in a local newspaper. (*Id*.). After receiving one application for it, the

---

[1] Neither Tartt nor Wilson County has a copy of the application Tartt submitted. Cindy Lynch, the Assistant Director of the Solid Waste Department who assists with the administration of the Animal Control Department, stated that although she maintains employment applications going as far back as 2000, she was unable to find Tartt's application after a diligent search. (Docket No. 26 at 1–2). For his part, Tartt recalls that he received a copy of the application he submitted but could not locate it later. (Docket No. 49-1 at 5). Tartt also "thought he sent it to his attorney," but his lawyer could not find it either. (*Id*.).

2

Department hired Nick Forbes on a part-time basis on September 8, 2008, and promoted him to full-time status six weeks later. (*Id*. at 2). As late as May 2012, the Department continued to employ Forbes in this job. (Docket No. 85 at 1). It has not hired another Animal Control Officer since Forbes came on. (*Id*.).

Plaintiff Cedric Jennings also lives in Rutherford County. Jennings has never applied for a position with Wilson County; the closest he came was when he received an email from his lawyer on July 21, 2009, about an opening in the Finance Department. (Docket No. 18 at 8–9; Docket No. 49-5 at 3). He told his lawyer the next day that he would "love to apply." (Docket No. 102-1 at 1). He did not do so, however. On August 31, 2009, the lawyer emailed Jennings again to say that the position was no longer available because the Finance Department "hired the sister of the former county clerk within days of firing the other person." (*Id*. at 2). The lawyer additionally wrote: "But if you want to be the representative plaintiff for African Americans that would have applied for jobs had they known about it (remember, Wilson County mainly hires from word of mouth), then let me know." (*Id*.). At his deposition, Jennings did not know the position that had been open in the Finance Department, where or when he heard about it, and whether he actually wanted to apply for it. (Docket No. 49-5 at 2).

## PROCEDURAL BACKGROUND

Karl Tartt filed a Charge of Discrimination Karl Tartt filed with the EEOC on August 14, 2009, (Docket No. 110-2 at 4), and both he and Cedric Jennings filed this lawsuit on December 11, 2009, (Docket No. 1). In it, they alleged claims of race discrimination under both disparate-treatment and disparate-impact theories in violation of Title VII of the Civil Rights Act of 1964, the Tennessee Human Rights Act, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. (Docket No. 18 at 22–25). Plaintiffs also sought class certification on their disparate-impact claims under Rules

3

23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, (*id*. at 25–29), which the Court denied on January 24, 2012, (Docket No. 79). Only Plaintiffs' individual claims remain.

## LEGAL STANDARD

A party may obtain summary judgment if the evidence establishes that there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the Court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question is whether any genuine issue of material fact is in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported summary-judgment motion, the nonmoving party must set forth specific facts that show a genuine issue of material fact for trial. If the party does not do so, summary judgment may be entered. Fed. R. Civ. P. 56(e). The nonmoving party's burden to point to evidence demonstrating a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## ANALYSIS

Wilson County seeks summary judgment on Plaintiffs' individual disparate-treatment discrimination claims (Count 2 of the second amended complaint) and disparate-impact claims (Count 3), both brought under Title VII. Wilson County further contends that if the Court grants

summary judgment on Plaintiffs' Title VII claims, the parallel claims brought under the Tennessee Human Rights Act, 42 U.S.C. § 1981, and 42 U.S.C. § 1983, (Counts 1, 4, and 5), will also be resolved because they are analyzed under the same standards as Title VII claims. *See Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 (6th Cir. 2008) (citing *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996)) (THRA claims); *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) (§ 1981 claims); *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000) (§ 1983 claims). The Court considers each set of claims in turn.

## I. Disparate-treatment claims under Title VII

To recover under a disparate-treatment theory of employment discrimination, Plaintiffs must show that Wilson County treated them less favorably than others because of their race, color, religion, sex, or national origin. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 796 n.4 (1973) (citing 42 U.S.C. § 2000e-2(a)(1)). In *McDonnell Douglas*, the Supreme Court established the now-familiar burden-shifting framework for claims, such as those Plaintiffs make here, where a plaintiff lacks direct evidence of discriminatory intent and bases his case instead on circumstantial evidence of discrimination. Under this framework, a plaintiff must first establish a prima facie case of racial discrimination, after which the employer receives the opportunity to articulate a legitimate nondiscriminatory reason for its actions. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008). If the employer can articulate such a reason, the plaintiff must then show that the stated reason was in fact pretextual. *Id*.

To establish a prima facie case of disparate treatment, a plaintiff in a failure-to-hire case must show: "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued

to seek applicants from persons of complainant's qualifications." *McDonnell Douglas*, 411 U.S. at 802. To satisfy the second prong, a plaintiff must have actually applied for the position into which he was not hired. *Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 F. App'x 620, 624 n.1 (6th Cir. 2010) (citing *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir. 2003).

"[T]o survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 532 (6th Cir. 2007), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), *as recognized in Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009). A failure to establish any one element of the prima facie case is sufficient to grant summary judgment for the defendant.[2]

**A. Tartt**

Wilson County is entitled to summary judgment on Tartt's disparate-treatment claim because Tartt cannot meet his burden to establish the second, third, or fourth prongs of the prima facie case. The first prong is not a problem: as an African-American male, Tartt is a racial minority. But Tartt's case founders on the second prong because he can't show that he "applied . . . for a job for which the employer was seeking applicants." *McDonnell Douglas*, 411 U.S. at 802. That means Tartt must present evidence that Wilson County sought or hired Animal

---

[2] Plaintiffs contend that the Court should analyze their THRA claims under a different summary-judgment standard. (Docket No. 112 at 17 (citing *Gossett v. Tractor Supply Co.*, 320 S.W.3d 777, 779 (Tenn. 2010)). In *Gossett*, the Tennessee Supreme Court held that the *McDonnell Douglas* framework was inappropriate to decide summary-judgment motions for THRA claims because that framework was incompatible with Tennessee's summary-judgment jurisprudence. Shortly after *Gossett* was decided, however, the Tennessee legislature abrogated the case by statute. *See* Tenn. Code Ann. § 4-21-311(e); *see also Bobo v. UPS*, 665 F.3d 741, 757 (6th Cir. 2012). Plaintiffs' argument is moot as a result.

Control Officers when he applied for that position or at any relevant time afterwards. Tartt cannot.

Tartt admits that he went to the Wilson County landfill in December 2008 to apply for a job as an Animal Control Officer. (Docket No. 113 at 1). And he does not point to evidence that the Department had vacant Animal Control Officer positions at that time. Nor has he shown that the position came open from that time until he filed his EEOC complaint in August 2009, this lawsuit in December 2009, or at any point after that.[3] Instead, the uncontroverted evidence shows that the most recent opening for an Animal Control Officer position before Tartt applied to the Department was in July 2008. (Docket No. 26 at 1). The Animal Control Department advertised that vacancy in a local newspaper, (*id.*), and, after receiving one application for it, hired Nick Forbes on a part-time basis on September 8 and promoted him to full-time work on October 20, (*id*. at 2). As of May 2012, Forbes was still employed by the Department, which did not hire another Animal Control Officer after Forbes started in 2008. (Docket No. 85 at1). Because the last opening for an Animal Control Officer position was filled at least two months before Tartt applied for it, and because there have been no openings since then, Tartt cannot show that "he applied . . . for a job for which the employer was seeking applicants." *McDonnell Douglas*, 411 U.S. at 802.

---

[3] Tartt's observation that the Animal Control Department posted an opening for a Director in October 2010, (Docket No. 113 at 1), is a red herring. To start, Tartt does not point to evidence that Wilson County was seeking applicants for the Director position when Tartt applied to the Animal Control Department in December 2008 or in the months leading up to the filing of his EEOC complaint in August 2009. Indeed, the only evidence Tartt points to is a job announcement for the Director position posted on Wilson County's website on October 25, 2010, 14 months after Tartt filed the EEOC complaint. (Docket No. 70-8 at 2–3). More to the point, Tartt applied for a position as an Animal Control Officer, not the Director of the Department. Among other problems with Tartt's argument, Tartt has not shown that he was qualified for the Director position, which requires an applicant to possess and maintain valid euthanasia certification. Both problems mean that Tartt can't make out the second part of the prima facie case.

7

Moreover, since Tartt did not apply for a position for which Wilson County sought applicants, it further follows that he cannot show he was rejected from such a position despite his qualifications—and thus cannot make out the third prong of the prima facie case. *Id*. Finally, Tartt cannot establish the fourth prong because no Animal Control Officer position remained open after Tartt was allegedly rejected from it, and Wilson County did not "continue[] to seek applicants from persons of [Tartt's] qualifications." *Id*.

Tartt attempts to escape this conclusion by arguing that, although he intended to apply for a job as an Animal Control Officer when he went to the landfill in December 2008, he actually wrote on his application "Animal Control/open position," meaning that "he applied and was qualified for any open position Wilson County was looking to fill." (Docket No. 112 at 16–19). The upshot of Tartt's argument is that Wilson County should have considered him for any available position, including those it filled in the Solid Waste Department after Tartt submitted his application in December 2008. (Docket No. 18 at 20 (allegations in Plaintiffs' second amended complaint that the Solid Waste Department hired four male employees from June 20, 2008 to January 20, 2009, and one white male on April 27, 2009); Docket No 73 at 19–20 (Defendant's answer admitting same)).

For at least four reasons, Tartt's attempt to broaden the range of jobs that he applied for fails to show that he actually applied for a job for which Wilson County sought applicants. First, Tartt's assertion that he applied for any open position conflicts with what he told the EEOC. In his sworn charge, Tartt plainly stated that he "went to the office of the Department of Solid Waste at the Wilson County landfill to apply for the job of animal control officer." (Docket No. 110-2 at 4; *see also id*. at 6). As the Supreme Court has noted in a different context, appellate courts "have held with virtual unanimity that a party cannot create a genuine issue of fact

sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). Here, Tartt does not attempt to explain why he told the EEOC that he applied for a job as an Animal Control Officer but insisted later that he actually sought any available position in Wilson County.

Second, Tartt's assertion is similarly inconsistent with the allegations made in two of the three complaints filed in this case. Both the original complaint filed on December 11, 2009, and the first amended complaint filed on January 14, 2010, tell a consistent story. They allege that "[o]n or about the middle to latter part of December, 2008, Plaintiff Karl Tartt went to the Wilson County landfill to apply for the job of Animal Control Officer." (Docket No. 1 at 11 (original complaint); Docket No. 13 at 11 (first amended complaint)). After Tartt got an application from Heather Christian, he asked her "if he did not get a job would they keep his application on file"; she replied, "'I believe so.'" (Docket No. 1 at 12; Docket No. 13 at 12). After filling out the application in his car, Tartt returned it to the office, and left. (Docket No. 1 at 12; Docket No. 13 at 12).

The Court compares those allegations with the ones contained in Tartt's second amended complaint (which, notably, was filed shortly after Wilson County first raised the defense that Tartt submitted an application for a position for which there was no opening, (Docket No. 11 at 2)). The second amended complaint changed two critical details compared to the first two versions. First, Tartt disclaimed in it his twice-repeated allegation that went to the landfill to apply for a job as Animal Control Officer, maintaining that he went there simply "to apply for a job." (Docket No. 18 at 18). Second, Tartt added the following explanation for why he asked Christian whether his application would be kept on file: "Mr. Tartt made this inquiry to show

9

that he was interested in any available jobs, not just animal control." In his opposition to summary judgment, Tartt ignores these discrepancies and does not explain the changes. The Court notes that both allegations are based entirely on information in Tartt's possession, meaning that they are unlikely to have changed due to further investigation or discovery. Moreover, the Court notes that all three versions of the complaint consistently allege that when Tartt placed follow-up calls to find out about the status of his application and was asked what position he applied for, Tartt "responded that he had applied for Animal Control." (Docket No. 1 at 13; Docket No. 13 at 13; Docket No. 18 at 19).

Third, the transcripts of Tartt's recordings of his in-person conversation with Christian in December 2008 and follow-up phone calls to inquire about his application in January 2009 similarly fail to show that Tartt wanted to be considered for any position other than Animal Control. Tartt's transcript of his conversation with Christian reveals that they discussed only an application for Animal Control. (Docket No. 53-1 at 1–3). Later, when Tartt called the landfill on January 15, 2009, he stated that he "put in an application for animal control"—and no more. (*Id*. at 4). And, finally, when he called again on January 20 and was asked what position he applied for, Tartt replied, "Uh, animal control." (*Id*. at 7).

The final obstacle Tartt runs into is the undisputed testimony that the Animal Control and Solid Waste Departments had two separate applications. (Docket No. 110-6 at 324). As Christian explained, she asked Tartt whether he was there to apply for a job in Animal Control so as to determine which application to give him. (*Id*. at 339). When Tartt replied in the affirmative, she presumably gave him the Animal Control application. Tartt does not contend otherwise or throw this conclusion into doubt. If Tartt filled out an application form emblazoned with the words "Animal Control" across the top and wrote on it "Animal Control/open position,"

he could not reasonably expect Wilson County to consider his application for anything other than an open Animal Control position. A recipient of Tartt's application could not reasonably infer that Tartt sought a job in Solid Waste, the Property Assessor's office, the Election Commission, or any of the myriad departments in which Wilson County employs individuals.

Tartt's late-stage attempt to broaden the scope of the positions for which he allegedly applied fails because Tartt offers no evidence that would allow a reasonable jury to conclude that he applied for any job other than Animal Control Officer. And because the Animal Control Department had no vacant Animal Control Officer positions when Tartt applied or at any time thereafter, Tartt cannot show that he "applied . . . for a job for which the employer was seeking applicants." *McDonnell Douglas*, 411 U.S. at 802. Therefore, Wilson County is entitled to summary judgment on Tartt's disparate-treatment claim.

### B. Jennings

Summary judgment is also appropriate for Wilson County on Jennings's disparate-treatment claim because Jennings also cannot establish "that he applied and was qualified for a job for which the employer was seeking applicants."[4] *Id*. Indeed, Jennings does not dispute that he did not apply for a job with Wilson County. (Docket No. 18 at 8–9; Docket No. 49-5 at 3). The full scope of his acquaintance with a position in Wilson County was the following email exchange with his lawyer in this case. On July 21, 2009, counsel wrote to Jennings:

---

[4] The Court notes that it is not entirely clear that Jennings also brings a disparate-treatment claim. (*Compare* Docket No. 18 at 19 (Count 2 of Plaintiffs' second amended complaint titled "Title VII - Disparate Treatment - Karl Tartt") *and* Docket No. 112 at 1–2 (table of contents to Plaintiffs' response to Defendant's motion for summary judgment addressing only Jennings's disparate-impact claim) *with* Docket No. 41 at 1–2 (stating that Plaintiffs' theory of the case includes Wilson County's disparate treatment of Jennings)). Nevertheless, for the sake of completeness in resolving the remaining claims in this case, the Court will analyze Jennings's disparate-treatment claim.

> I just got word from a potential client that a job opened up in the Wilson County
> Finance Department. This potential client just got fired last Friday for improper
> reasons (but that's another story). Her job was covering for other people,
> answering telephones, filing, etc. and doing payroll and insurance processing . . . .
> This sounds like right up your alley in terms of your insurance experience . . . .
> Call me to discuss if you are interested in applying.

(Docket No. 102-1 at 1). The next day, Jennings replied: "I'd love to apply. My insurance experience was as an adjuster. I'm not really sure how that relates to this position, but I need something." (*Id*.). And that was it. Jennings did not run straight down to the Finance Department to apply; indeed, he did nothing further to pursue the job. Forty-one days later, Jennings's lawyer emailed Jennings again to tell him that the position was no longer available:

> [N]ever mind on the job application. They hired the sister of the former county
> clerk within days of firing the other person so the job has been filled. But if you
> want to be the representative plaintiff for African Americans that would have
> applied for jobs had they known about it (remember, Wilson County mainly hires
> from word of mouth), then let me know.

(*Id*. at 2). At his deposition, Jennings could not recall the specific position that had been open in the Finance Department and did not know where or when he heard about the job. (Docket No. 49-5 at 2). Jennings also could not say that he actually wanted to apply for the Finance Department job that he "vaguely" remembered hearing about:

> Q: Okay. Did you have any intentions of applying for this job that you may have
> heard about?
> A: I have intentions of applying to any job that's going to better myself, my
> financial situation . . . whether it be in Wilson, Rutherford, or any other county.

(*Id*.). In short, Jennings did not apply for a position for which Wilson County sought applicants.

Further, Jennings has not shown that he was qualified for the job that he "may have" or "may not have" heard about. (*Id*.). The only evidence that speaks to his qualifications—

Jennings's comment that he was "not really sure how [his insurance experience] relates to this position," (Docket No. 102-1 at 1)—does not suggest that Jennings was cut out for it.

While Jennings does not point to record evidence to show that he applied and was qualified for the position, he contends that his failure to apply for a position does not bar recovery under Title VII because he is a "deterred applicant" under the Supreme Court's decision in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). In *Teamsters*, the Supreme Court the held that minority bus drivers who had not applied for more favorable positions from their employer could still recover for the employer's discriminatory seniority and promotion policies under Title VII because applying under those policies would have been futile. *Teamsters* recognized that "[a] consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection." *Id*. at 365. If, for example, "an employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs." *Id*. *Teamsters* therefore concluded that "[w]hen a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application." *Id*. at 365–66.

In the Sixth Circuit, this exemption from the usual application requirement comes into play where the circumstances "reveal overwhelming evidence of pervasive discrimination in all aspects of the employer's [hiring] practices, and that any application would have been futile and perhaps foolhardy." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 576 (6th Cir. 2004) (alterations, ellipsis, and internal quotation marks omitted). To merit relief, a nonapplicant

13

plaintiff has "the not always easy burden of proving that he would have applied for the job had it not been for [the employer's discriminatory] practices." *Teamsters*, 431 U.S. at 368. Meeting this burden "requires two distinct determinations: that he would have applied but for discrimination and that he would have been discriminatorily rejected had he applied." *Id*. at 368 n.52. In addition, the nonapplicant must "com[e] forward with the basic information about his qualifications that he would have presented in an application." *Id*. at 369 n.53.

Jennings cannot seek shelter under this limited exemption to the application requirement. First, as already noted, Jennings has not shown "his qualifications that he would have presented in an application" for the job from which he was deterred from applying. *Id*. Second, Jennings has not made a clear and positive showing that the alleged cronyism in Wilson County's government deterred him from applying for a job. True, Plaintiffs' complaint includes general allegations that it would have been futile for Jennings to apply for a position in the Finance Department because open positions go to relatives and friends of incumbent employees. But Jennings all but disclaimed the argument that those practices specifically deterred him from applying. When asked if "anything . . . ever discouraged you from applying for a job with Wilson County, Tennessee," Jennings replied simply, "Not that I recall." (Docket No. 49-5 at 3). Asked later if he had heard specifically that "Wilson County didn't hire African-Americans," Jennings admitted that he had not. (*See id*. ("You hear that everywhere. I mean, about—you hear it about Rutherford [County]. You hear it about everywhere, actually. You know, so I just can't say specifically Wilson County, but you hear it about everywhere.")). And when queried whether the general reputation of counties "frustrate[d] [him] from applying for a job with Wilson County," Jennings stated, "Not to my recollection." (*Id*.).

In *Teamsters*, the Supreme Court emphasized the injustice of denying relief to persons who had been "unwilling to subject themselves to the humiliation of explicit and certain rejection," 431 U.S. at 365, which suggests a workplace suffused with a climate of fear, prejudice, or antagonism that discourages potential applicants. The evidence in this case falls short of even intimating that, had he applied for the Finance Department position, Jennings would have occasioned such fear or humiliation. As a result, Jennings has failed to establish that applying for this position would have been futile and, in turn, failed to make out his prima facie case of discrimination. Therefore, Wilson County is entitled to summary judgment on Jennings's disparate-treatment claim.

## II. Disparate-impact claims under Title VII

The Court next considers whether summary judgment is appropriate on Plaintiffs' disparate-impact claims. "The disparate impact theory requires a plaintiff to demonstrate that a facially neutral employment practice falls more harshly on one group than another and that the practice is not justified by business necessity." *Dunlap v. Tenn. Valley Auth.*, 519 F.3d 626, 629 (6th Cir. 2008) (citations omitted). Courts use a three-part burden-shifting test to determine whether unlawful disparate impact exists:

> First, the plaintiff must establish a prima facie case of discrimination—i.e., the plaintiff must establish that an adverse impact has occurred. If he succeeds, the employer must show that the protocol in question has a manifest relationship to the employment—the so-called business necessity justification. The plaintiff must then show that other tests or selection protocols would serve the employer's interest without creating the undesirable discriminatory effect.

*Id.* (citations and internal quotation marks omitted). To establish a prima facie case, a plaintiff must: (1) identify a specific employment practice to be challenged; and (2) offer statistical evidence sufficient to show that the practice causes the adverse effect on a protected group. *Id.*

While a disparate-impact claim does not require a plaintiff to prove the defendant's intent to discriminate, the plaintiff must nonetheless "demonstrate a connection between the challenged practice and the resulting disparities between protected and non-protected classes." *Bacon*, 370 F.3d at 576 (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989)). It follows that "an individual plaintiff arguing a disparate impact theory must show that the challenged policy directly disadvantaged him in some fashion." *Id*. The Sixth Circuit has made clear that this prerequisite goes to a plaintiff's standing, which lets him invoke this Court's jurisdiction only if he has "a "personal stake in the outcome of the controversy'" and has "suffered some real or threatened injury." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

The particular employment practice Tartt and Jennings challenge is that all-white managers refuse to advertise job openings in Wilson County and choose instead to refer these openings to other white friends and family. (Docket No. 112 at 24). While the Court doubts that this alleged practice is facially neutral (since a policy in which all-white managers refer job openings only to white people appears to be facially discriminatory), that concern can be put aside because Tartt and Jennings have not met their burden to show that the policy injured them.

The alleged policy did not injure Tartt for two reasons. First, Wilson County indisputably advertised the Animal Control Officer job, (Docket No. 26 at 1), which, as the Court concluded above, was the sole position for which Tartt applied. Second, Tartt has not produced any evidence—or, frankly, even suggested—that Nick Forbes, the individual hired into the position at least two months before Tartt applied for it, was a friend or family member of a Wilson County employee. As Forbes testified, he sent in his résumé after seeing the advertisement in the newspaper. (Docket No. 49-3 at 3–4).

The alleged policy also did not injure Jennings. Wilson County's failure to advertise the Finance Department position did not preclude Jennings from learning about it or applying for it. As noted above, Jennings found out about the position from his lawyer four days after it became available. And although he knew about it, Jennings did not stir for 41 days, at which point his lawyer informed him that Wilson County filled the position. At no time did Jennings apply for that position or any other in Wilson County. More, Jennings could not say that he actually wanted to apply for the Finance Department job that his lawyer told him about. (Docket No. 49-5 at 2 (stating, in response to a question asking whether Jennings had "any intentions of applying for this job that you may have heard about," that "I have intentions of applying to any job that's going to better myself, my financial situation . . . whether it be in Wilson, Rutherford, or any other county")). If Jennings has standing to bring a disparate-impact claim against Wilson County on this basis, then so does any member of a protected group—in Tennessee, Hawaii, or Alaska—who does nothing more than merely assert that he wants to improve his lot. Jennings does not have standing to bring this claim.

Resisting this conclusion, Plaintiffs argue that the Court's previous ruling denying class certification explicitly rejected Wilson County's argument that Tartt and Jennings lacked standing to represent putative class members because their disparate-impact claims were invalid. (Docket No. 78 at 6–7). Thus, Plaintiffs conclude, the issue of standing has been resolved and is now the law of the case. (Docket No. 112 at 8).

"Under the doctrine of the law of the case, a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990). But "the law-of-the-case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their

power.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Messinger v. Anderson*, 225 U.S. 436, 444 (1912) (Holmes, J.)). The doctrine, therefore, "does not foreclose a court from reconsidering issues in a case previously decided by the same court or another court." *Todd*, 920 F.2d at 403.

More to the point, application of the law-of-the-case doctrine is particularly unsuitable to a court's ruling on a party's standing. *See, e.g.*, *Nat'l Air Traffic Controllers Ass'n v. Sec'y of Dep't of Transp.*, 654 F.3d 654, 660 (6th Cir. 2011) ("No previous court's decision can compel that we find standing now that the [plaintiffs] no longer suffer an injury in fact."). That is because standing necessary to invoke a federal court's jurisdiction must persist at every stage of a case. *See Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."). As "federal courts are under an independent obligation to examine their own jurisdiction," of which "standing is perhaps the most important" jurisdictional doctrine, a court must reexamine the issue of standing whenever it is in doubt. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotation marks and alteration omitted). And since a plaintiff's burden to show standing varies at each stage of a case,[5] it makes little sense to say that the law-of-the-case doctrine cements a standing analysis conducted at the pleading stage, for example, when the evidence adduced at trial is inadequate to support the court's jurisdiction.

---

[5] The Supreme Court has explained a plaintiff's changing burden to demonstrate standing as follows:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . . In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

*See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks and citations omitted).

In this case, the Court's prior standing analysis considered only the pleadings, accepting as true all of the complaint's allegations and rejecting Wilson County's reliance on affidavit and deposition testimony. (Docket No. 78 at 6). On summary judgment, however, Plaintiffs face a higher burden to demonstrate their injury. Here, neither Tartt nor Jennings have met that burden because neither can show personal injury stemming from the employment practices they challenge. (Docket No. 112 at 24). And because Tartt and Jennings are not proper plaintiffs to bring a disparate-impact claim to attack these alleged practices, summary judgment for Wilson County is appropriate.

## III. THRA, § 1981, and § 1983 claims

Because Plaintiffs' THRA, § 1981, and § 1983 claims are analyzed under the same standards as Title VII discrimination claims, Wilson County is entitled to summary judgment on Plaintiffs' claims brought under these statutes these as well.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Wilson County's motion for summary judgment (Docket No. 87). An appropriate Order will be entered.

_Kevin H. Sharp_
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE